1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

WILLIAM REED ST. CLAIR,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

Defendant.

16

CASE NO. 14-cv-05141 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17

        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21

14, 15, 18).

22

        After considering and reviewing the record, the Court concludes that the ALJ

23

erred by failing to discuss an opinion from an examining doctor regarding plaintiff's

24

1   potential difficulties with authority figures and erred by not discussing adequately the

2   same doctor's opinion that plaintiff may have difficulties sustaining performance of

3   simple, repetitive tasks in the workplace.

4       Therefore, this matter is reversed and remanded pursuant to sentence four of 42

5   U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

6                                   BACKGROUND

7       Plaintiff, WILLIAM REED ST. CLAIR, was born in 1987 and was 22 years old

8   on the alleged date of disability onset of October 13, 2009 (*see* Tr. 9, 95-105). Plaintiff

9   started the ninth grade, but was taken out of school and homeschooled, and did not

10  graduate or get a diploma (Tr. 38).   Plaintiff worked part-time for his dad in his janitorial

11  business but has not worked since being shot in the head (Tr. 36-38).

12

13      According to the ALJ, plaintiff has at least the severe impairments of "status post

14  traumatic brain injury (TBI) with cognitive disorder NOS (20 CFR 416.920(c))" (Tr. 11).

15      At the time of the hearing, plaintiff was living at home with his parents (Tr. 36).

16                              PROCEDURAL HISTORY

17      Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant

18  to 42 U.S.C. § 1382(a) (Title XVI) was denied initially and following reconsideration

19  (*see* Tr. 58-61, 65-70). Plaintiff's requested hearing was held before Administrative Law

20  Judge Robert P. Kingsley ("the ALJ") on November 3, 2011 (*see* Tr. 27-55). On April 23,

21  2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not

22  disabled pursuant to the Social Security Act (*see* Tr.6-26).

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

1    In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or

2    not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ

3    properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated

4    the lay witness testimony; (4) Whether or not the ALJ properly assessed plaintiff's

5    residual functional capacity; and (5) Whether or not the ALJ erred by basing his step four

6    and alternate step five findings on a residual functional capacity assessment that did not

7    include all of plaintiff's limitations (*see* ECF No. 14, p. 1).

8                                STANDARD OF REVIEW

9        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

10   denial of social security benefits if the ALJ's findings are based on legal error or not

11   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

12   1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

13   1999)).

14

15                                    DISCUSSION

16   (1)    **Whether or not the ALJ properly evaluated the medical evidence.**

17       Plaintiff argues that the ALJ erred by not giving full weight to opinions from

18   examining doctors, Dr. Carla van Dam, Ph.D. and Dr. James Parker, M.D. (*see* ECF No.

19   14, pp. 6-9). As discussed below, the Court agrees with plaintiff's argument. Although

20   plaintiff also argues that the ALJ erred by not crediting fully opinions from non-

21   examining, state agency medical consultants, the Court does not agree with plaintiff's

22   argument regarding these opinions; however, because this matter is being remanded for

23

24

further evaluation of the medical evidence, the state agency medical consultants' opinions should be evaluated anew following remand of this matter.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. Dr. Carla Van Dam, Ph.D., examining doctor

The ALJ gave only "limited weight" to Dr. van Dam's assignment of a GAF of 50 because plaintiff "had just endured a traumatic accident and he had just quit drinking but not voluntarily" (*see* Tr. 16). As a GAF is a contemporaneous assessment of global functioning, the fact that plaintiff recently had suffered a traumatic brain injury is not a legitimate reason to discount her assessment of his functional ability at that time. Her GAF of 50 clearly is her assessment of his functional ability at that time, in the context of his recent gunshot to the head.

The ALJ's second reason to discount her GAF assignment also is not legitimate. The ALJ does not explain how the fact that plaintiff had recently involuntarily quit drinking, a fact of which Dr. van Dam clearly was aware, negates her assessment of his

contemporaneous functioning (*see* Tr. 16). The Court also notes that although the ALJ indicated that plaintiff "was not fully cooperative" in his evaluation with Dr. van Dam, this finding is in direct contradiction to the opinion of Dr. van Dam that plaintiff "cooperated fully on testing" (*see* Tr. 345).

      B. Dr. James Parker, M.D., examining doctor

      Although the ALJ indicates that he gave "little weight" to Dr. Parker's assignment of a GAF of 52-56 due in part to the ALJ's finding that "objective testing has shown him capable" of working, the ALJ does not specify any "objective testing" that demonstrated that plaintiff was capable of working (*see* Tr. 16). Without more, this is not a specific and legitimate reason to discount Dr. Parker's assignment of a GAF of 52-56. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043; *Murray*, *supra*, 722 F.2d at 502). Although plaintiff may have successfully completed some of the tasks presented during his evaluations, this does not demonstrate by objective testing that plaintiff is capable of working.  Since the ALJ failed to specify any other "objective testing," that statement alone does not constitute a specific and legitimate reason supported by substantial evidence in the record as a whole.

      Perhaps most importantly, the ALJ discounts Dr. Parker's assessment that plaintiff may have difficulty with sustaining simple, repetitive tasks with a finding that "the claimant has demonstrated the ability to persist as noted by Dr. van Dam" (*see* Tr. 19; *see also* Tr. 379). However, Dr. van Dam did not opine that plaintiff was capable of persistence. Instead, Dr. van Dam opined that "given some structure he could engage in more meaningful activities than might currently be the case" (*see* Tr. 347-48). There are

two important differences between Dr. van Dam's opinion and the ALJ's characterization of her opinion: First, she indicated that he would need "some structure"  -- a finding buttressed by the number of occasions at which he required additional prompting to answer the questions put forth by Dr. van Dam (*see, e.g.,* Tr. 345 ("it took some effort to get him to respond at all to various questions;" and during testing of abstract reasoning, plaintiff "at first insisted that he had no idea what it meant," and to a second example, only answered "when pressed to venture a guess")). Although Dr. van Dam also noted that plaintiff was able to complete the testing and stay on task when continually prompted, the ability to answer questions when prompted in a structured environment at a doctor's office is not the same as the ability to sustain accurate performance in a full time work setting without additional structure.

Secondly, Dr. van Dam opined that with structure, plaintiff would be capable of engaging in "more meaningful activities than might currently be the case," not that he would be capable of persisting on a full time basis with the performance of work tasks (*see* Tr. 347-48). At the time, plaintiff was living at home with his parents and never leaving the house. Even if plaintiff was capable of engaging in more meaningful activities than living at home with his parents and never leaving the house, that does not necessarily translate into an ability to persist in full time employment in a non-structured work environment.

Although the ALJ also relied on a finding that plaintiff demonstrated adequate decision making skills in his testing, plaintiff demonstrated such poor judgment after his brain injury that he "needed 24-hour supervision," as noted by the ALJ (*see* Tr. 14); and,

1   the trained mental health professional who subsequently explicitly evaluated plaintiff's

2   mental status indicated a different opinion from that of the ALJ, and opined that

3   plaintiff's judgment was "poor" (*see* Tr. 395; *see also* Tr. 404). Additionally, as noted by

4   the ALJ, plaintiff "reported drinking up to 36 beers and one pint of whiskey daily" prior

5   to his injury (*see* Tr. 18 (*citing* Exhibit 2F/12)), and the fact that he indicated a desire to

6   resume drinking as soon as possible despite shooting himself in the head while

7   intoxicated does very little to demonstrate good decision making skills and judgment (*see*

8   Tr. 347). As opined by Dr. van Dam, plaintiff's intent to return to his steady alcohol

9   drinking demonstrated that plaintiff was "thereby showing little insight or judgment

10  regarding his circumstances" (*see id.*). The Court also notes that plaintiff "was

11  recommended AA, but he refuses to go because he does not think he has a drinking

12  problem and does not see the correlation with his anger and irritability" (*see* Tr. 336). It

13  also is unclear how decision making skills translate into persistence.

14

15          For these reasons and based on the record as a whole, the Court concludes that the

16  ALJ's finding that plaintiff "demonstrated adequate decision making skills on testing"

17  does not support the ALJ's rejection of the medical opinion from examining doctor, Dr.

18  Parker regarding plaintiff's potential difficulty with sustaining performance of simple,

19  repetitive tasks with reasonable accuracy (*see* Tr. 19). Therefore, this conclusion is not

20  supported by substantial evidence in the record as a whole.

21          Similarly, although the ALJ found that plaintiff's decision making skills "would

22  likely only be limited in day-to-day life by his lack of motivation and poor attitude," the

23  record as a whole and plaintiff's post-injury testing demonstrates that plaintiff's traumatic

24

brain injury also limits his decision making skills. In addition, the ALJ does not explain the logical nexus between plaintiff's decision making skills and his ability to persist and sustain work performance. The ability to make a decision, even if such ability is adequate, does not appear largely related to an ability to persist and sustain work activities. Based on the record as a whole, the Court concludes that the ALJ's finding that plaintiff's decision making skills "would likely only be limited in day-to-day life by his lack of motivation and poor attitude" does not adequately explain the ALJ's failure to credit the opinion from Dr. Parker that plaintiff may have difficulty sustaining accurate performance of simple, repetitive tasks.

The Court also concludes that the fact that plaintiff was very good at his job of floor waxer before he suffered the gunshot to the head does not provide a legitimate reason to discredit Dr. Parker's opinion that following the traumatic brain injury plaintiff may have difficulty sustaining the performance of simple, repetitive tasks (*see* Tr. 19, 379). Finally, the ALJ does not indicate what aspect of the record supports his finding that plaintiff "seems to indicate a decrease in impulsive behavior since the accident" (*see* Tr. 19). It is unclear what the ALJ based this finding on and such a finding also does not appear to demonstrate persistence ability. Therefore, the Court concludes based on the record as a whole that this finding is not based on substantial evidence in the record as a whole and does not justify the ALJ's rejection of the opinion of Dr. Parker regarding plaintiff's potential limitation regarding sustaining accurate performance of simple, repetitive tasks.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ did not provide specific and legitimate reasons based on substantial evidence in the record as a whole for the rejection of Dr. Parker's opinion that plaintiff may have difficulty sustaining the performance of simple, repetitive tasks.

Similarly, although the ALJ gave "little weight" to Dr. Parker's assignment of a GAF of 52-56 with a finding that "it appears to be based on psychosocial stressors of being unemployed and a recent relationship breakup rather than his ability to work," there is not substantial evidence in the record to support this finding by the ALJ (Tr. 16). Although Dr. Parker noted these factors in the section where psychosocial stressors always are reported, nothing in Dr. Parker's opinions suggests that he relied on such findings when providing his opinion regarding plaintiff's global assessment of functioning ("GAF"). In fact, the opinion from Dr. Parker explicitly suggests otherwise, as in the subsequent section regarding functional assessment, neither one of these facts is mentioned, instead Dr. Parker notes plaintiff's history of alcohol and drug abuse; his indications of impulsiveness; his irritability; and his problems with authority figures (*see* Tr. 379).

Furthermore, the Court notes that the ALJ failed to mention Dr. Parker's opinion that plaintiff's problems with authority figures "would be a problem in a workplace" (*see id.*).

The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700,

706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Dr. Parker's opinion that plaintiff's problems with authority figures "would be a problem in a workplace" is significant, probative evidence that the ALJ erred in failing to discuss. *See id.* (*see also* Tr. 379). The ALJ found that plaintiff is able to interact occasionally with supervisors without any discussion of plaintiff's problems with authority figures as opined by Dr. Parker (*see* Tr. 13, 379). However, according to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.

The ALJ's failure to discuss Dr. Parker's opinion regarding plaintiff's difficulties with authority figures is legal error, *see id.*; *Flores, supra*, 49 F.3d at 571; and his failure to explain adequately why Dr. Parker's opinion that plaintiff may have difficulty with sustaining simple, repetitive tasks was not accommodated into plaintiff's RFC also is legal error. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043; *Murray*, *supra,* 722 F.2d at 502). These legal errors are not harmless, as had they been incorporated into plaintiff's RFC, the ultimate determination regarding disability may have been different.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Based on the record as a whole, the Court concludes that the ALJ's failure to discuss Dr. Parker's opinion regarding plaintiff's difficulties with authority figures; and his failure to explain adequately why Dr. Parker's opinion that plaintiff may have difficulty with sustaining simple, repetitive tasks was not accommodated into plaintiff's RFC, may have affected the outcome of the case. *See Molina*, *supra,* 674 F.3d at 1115. Therefore, they are not harmless errors. The Court also concludes that the ALJ did not set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," with regard to the opinions of Drs. Van Dam and Parker. *See Reddick*, *supra,* 157 F.3d at 725 (*citing Magallanes*, *supra,* 881 F.2d at 751). These opinions should be evaluated anew following remand of this matter.

C. State agency non-examining doctors, Dr. Thomas Clifford, Ph.D. and Dr. Bruce Eather, Ph.D.

1    Because this Court is directing the ALJ to re-evaluate the medical evidence, it is

2    appropriate that the ALJ also reconsider his evaluation of the state agency non-examining

3    physicians' opinions in light of that re-evaluation.

4         D. Other medical evidence from examining source, Mr. Bill Wilson, M.A., M.H.P.

5         Plaintiff also complains about the ALJ's rejection of lay evidence from Mr.

6    Wilson regarding plaintiff's GAF score of 45, and his opinion that plaintiff was "possibly

7    unemployable" (*see* ECF No. 14, p. 10 (*citing* Tr. 16; *see also* Tr. 397)). The ALJ

8    rejected these opinions from Mr. Wilson, in part, by finding that they appeared to be

9

10   "based solely on the claimant's reports" (*see* Tr. 16).

11        An ALJ may disregard opinion evidence provided by both types of "other

12   sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons

13   germane to each witness for doing so.' *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

14   1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Here,

15   although Mr. Wilson reported plaintiff's self-reports, Mr. Wilson also made a number of

16   independent observations, on multiple examinations, such as that plaintiff appeared

17   unkempt, expressionless, and hostile, (*see* Tr. 390-407). Mr. Wilson also observed that

18   plaintiff was "staring at [the] floor-fetal sitting position-clutching self" (Tr. 404). These

19   are significant, probative observations that the ALJ should have discussed.

20

21        Therefore, based on the record as a whole, the Court concludes that the ALJ

22   should consider anew the opinions of Mr. Wilson following remand of this matter.

23        As discussed above, *see supra*, sections 1.A and B, this matter must be reversed

24   and remanded for further consideration of the medical evidence. The opinions of Drs. van

Dam and Parker require a more detailed and thorough analysis. The ALJ also should evaluate anew the other medical evidence provided by Mr. Wilson.

       (2)      **Whether or not the ALJ properly evaluated plaintiff's testimony**.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

       (3)      **Whether or not the ALJ properly evaluated the lay witness testimony.**

Plaintiff challenges the rejection by the ALJ of opinions from multiple lay witnesses, including the lay statements from both of plaintiff's parents and the lay evidence from Ms. Deyla Schneider, the owner of Career Quest, an agency that provides assessments, evaluations and vocational services (*see* ECF No. 14, pp. 16-21). Because the Court has concluded already that this matter must be reversed and remanded, *see supra*, section 1; based on the record as a whole; and for the specific reasons elucidated below, the Court concludes that all of the lay evidence should be evaluated anew following remand of this matter, including the other medical evidence from Mr. Wilson, as discussed above, *see supra*, section 1.D.

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)

1   (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). However, the ALJ failed

2   to credit the lay evidence provided by plaintiff's mother by finding that "the objective

3   medical evidence does not support the[] allegations" (Tr. 20). This is not a proper

4   rationale for the rejection of her lay statement. *See Bruce, supra*, 557 F.3d at 1116 (*citing*

5   *Smolen, supra*, 80 F.3d at 1289). Although the ALJ also found that "at one evaluation it

6   was found that he demonstrated adequate memory, reasoning, and judgment to perform

7   most activities independently" the ALJ is improperly mistaking plaintiff's "Functional

8   Goals" with medical findings (Tr. 20 (*citing* Tr. 331)). Although the ALJ may have

9   provided a reason to reject one statement by plaintiff's mother that he called multiple

10  times when they were away shopping, suggesting that he was bored, this reason does not

11  apply to all of the limitations and opinions included in the lay statement.

12

13          Similarly, the ALJ's characterization of the lay testimony from plaintiff's father as

14  demonstrating that plaintiff is able to do simple work is not based on substantial evidence

15  in the record and does not reflect a thorough review of this lay testimony provided at

16  plaintiff's administrative hearing (*see* Tr. 19-20, 43-49). For example, plaintiff's father

17  testified that if he gave plaintiff a task to accomplish, that usually within a five or ten

18  minute period, plaintiff would wander off and not complete the task; that plaintiff tires

19  easily; that plaintiff complains of headaches (*see* Tr. 47); and that he has witnessed

20  plaintiff having angry outbursts (*see* Tr. 48).

21          (4)     **Whether or not the ALJ properly assessed plaintiff's residual
                    functional capacity ("RFC").**

22

23

24

1    Because the Court has concluded that this matter shall be reversed and remanded

2  for further proceedings, plaintiff's RFC should be assessed anew following remand of

3  this matter.

4         **(5)   Whether or not the ALJ erred by basing his step four and alternate
            step five findings on a residual functional capacity assessment that did
5           not include all of plaintiff's limitations.**

6

7     Similarly, the step four and step five findings, as necessary, must be assessed anew

8  following remand of this matter.

9                              <u>CONCLUSION</u>

10    Based on the stated reasons and the relevant record, the Court **ORDERS** that this

11 matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

12 405(g) to the Acting Commissioner for further consideration.

13    **JUDGMENT** should be for plaintiff and the case should be closed.

14    Dated this 23rd day of October, 2014.

15

16

17

18

19

20    J. Richard Creatura
      United States Magistrate Judge

21

22

23

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

ORDER ON PLAINTIFF'S COMPLAINT - 16